UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA LYMAN,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>PETSMART, INC.,<br><br>　　　　　　　　　　Defendant. | CIVIL ACTION<br><br>NO. 16-CV-04627[KMK/JCM] |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

John M. Wutz, Esquire
Bar Roll Number: 4456067
The Chartwell Law Offices, LLP
Attorney for Moving Defendant, PetSmart, Inc.
One Logan Square, 26th Floor
130 N 18th Street
Philadelphia, Pennsylvania 19103
P: (212) 972-7006
F: (212) 972-7008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... i

ARGUMENT .......................................................................................................................1

I.    PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE
      INDICATING THAT DEFENDANT HAD NOTICE OF THE
      CONDITION COMPLAINED OF ..........................................................................1

II.   THERE WAS NO RECURRENT CONDITION AT DEFENDANT'S
      PREMISES ...............................................................................................................2

III.  DEFENDANT DID NOT CREATE ANY ALLEGEDLY DANGEROUS
      CONDITION .............................................................................................................6

IV.   PLAINTIFF DID NOT FALL IN THE "FRONT" OF THE STORE ..........................8

V.    PLAINTIFF'S ARGUMENT THAT DEFENDANT HAD A DUTY TO WARN
      MUST FAIL ...............................................................................................................9

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Case Law**

Camizzi v. Topps,
     244 A.D.2d 1002, 664 N.Y.S.2d 964 (4th Dep't 1997)............................................................4

Chance v. County of Ulster,
     144 A.D.3d 1257, 41 N.Y.S.3d 313 (3d Dep't 2016).............................................................8

Chin v. Harp Marketing,
     232 A.D.2d 601, 648 N.Y.S.2d 697 (2d Dep't 1996).............................................................4

Chowdhury v. Rodriguez,
     57 A.D.3d 121, 867 N.Y.S.2d 123 (2d Dep't 2008)...............................................................8

Cornish v. City of Ithaca,
     149 A.D.3d 1321, 52 N.Y.S.3d 565 (3d Dep't 2017).............................................................8

Klerman v. Fine Fare Supermarket,
     96 A.D.3d 907, 946 N.Y.S.2d 506 (2d Dep't 2012)...............................................................2

Lamour v. Decinus,
     118 A.D.3d 851, 988 N.Y.S.2d 235 (2d Dep't 2014).............................................................2

Lowe v. Spada,
     282 A.D.2d 815, 722 N.Y.S.2d 820 (3d Dep't 2001)..........................................................3, 6

Michele v. PetSmart, Inc.,
     45 Misc. 3d 1223(A), 5 N.Y.S.3d 328 (N.Y. Sup. Ct. 2013)................................................2

O'Connor-Miele v. Barhite & Holzinger, Inc.,
     234 A.D.2d 106, 650 N.Y.S.2d 717 (1st Dep't 1996).........................................................3, 4

Padula v. Big V Supermarkets, Inc.,
     173 A.D.2d 1094, 570 N.Y.S.2d 850 (3d Dep't 1991)...........................................................5

Petri v. Half Off Cards,
     284 A.D.2d 444, 727 N.Y.S.2d 455 (2d Dep't 2001).......................................................5, 7, 8

Piacquadio v. Recine Realty Corp.,
     84 N.Y.2d 967, 646 N.E.2d 795, 622 N.Y.S.2d 493 (1994)................................................3

Sohi v. Costco Wholesale Corp.,
     144 A.D.3d 1130, 41 N.Y.S.3d 757 (2d Dep't 2016)............................................................1

Weisenthal v. Pickman,
    153 A.D.2d 849 (2d Dep't 1989) .......................................................................4

Yarborough v. City of New York,
    10 N.Y.3d 726. 882 N.E.2d 873, 853 N.Y.S.2d 261 (2008).................................8

Zeller v. Pathmark Stores, Inc.,
    No. 00-CV-8216 (DLC), 2001 WL 1196196 (S.D.N.Y. Oct. 10, 2001) ............................6

## ARGUMENT

I.   **PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE INDICATING THAT DEFENDANT HAD NOTICE OF THE CONDITION COMPLAINED OF**

In order for a defendant to prevail on a motion for summary judgment on an issue of notice, it must present, "some evidence as to when the accident site was last cleaned or inspected prior to the plaintiff's fall." *See*, Sohi v. Costco Wholesale Corp., 144 A.D.3d 1130, 1131, 41 N.Y.S.3d 757, 758 (2d Dep't 2016). While Defendant has presented evidence that its employee, David Silva (hereinafter "Silva") inspected the area of Plaintiff's fall mere minutes prior thereto, Plaintiff has not presented any evidence establishing actual or constructive notice on the part of Defendant.

In an attempt to bypass this failure, Plaintiff's opposition papers attempt to create a feigned issue of fact by arguing that Silva did not inspect the area of her alleged fall. She argues that "she fell a great distance from where Mr. Silva claims she fell." *See*, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Memo in Opp.") at Pg. 21. However it is abundantly clear that at Silva's deposition he reviewed the exhibits introduced at Plaintiff's deposition – where Plaintiff was asked to mark the exact location of her fall on photographs (*see*, Exhibit "M" at "C", "D" and "E") – and was specifically asked whether he inspected that area. In response, Silva stated that he had checked that area during his 5 pm inspection. *See*, Exhibit "N" at Pg. 89, line 3–Pg. 90, line 4. He also clearly testified that he had walked through the area that Plaintiff had identified with an "x", and that there was no urine on the floor as of 5:00-5:05 pm. *See*, Exhibit "N" at Pg. 102, line 18–Pg. 103, line 4; Pg. 113, line 5–Pg. 114, line 3. Therefore, in spite of Plaintiff's attempt to obfuscate this issue, there can be no question that Silva specifically inspected the area where Plaintiff claims

1

she fell mere minutes prior to her accident, and that he did not see any dog urine on the floor at that time.

Plaintiff next argues that Defendant's failure to submit the "security sign-in sheet" was fatal to its motion, and cites to numerous cases. However, unlike the instant case, in all of the cases cited by Plaintiff the defendant's summary judgment motions were denied on the basis that they had not presented any evidence regarding an inspection on the date of the accident. *See, e.g.*, Lamour v. Decinus, 118 A.D.3d 851, 988 N.Y.S.2d 235 (2d Dep't 2014)(noting that the defendant "introduced no evidence as to when she had last cleaned or inspected the staircase relative to the time the plaintiff fell."); Klerman v. Fine Fare Supermarket, 96 A.D.3d 907, 946 N.Y.S.2d 506 (2d Dep't 2012)(finding that deposition testimony that refers to general inspection practices, as opposed to specific evidence regarding those activities on the alleged accident date, was fatal to defendant's motion); Michele v. PetSmart, Inc., 45 Misc. 3d 1223(A), 5 N.Y.S.3d 328 (N.Y. Sup. Ct. 2013)(noting that there was no testimony, "nor any other evidence as to when the area in question was last cleaned or inspected.").

Consequently, it is clear that by presenting the testimony of Silva, who clearly and unequivocally inspected the area in which Plaintiff claims she fell mere minutes prior to her alleged accident, Defendant has met its burden.

## II.     THERE WAS NO RECURRENT CONDITION AT DEFENDANT'S PREMISES

Failing to present any evidence as to how dog urine came to be on the floor of Defendant's premises prior to her alleged accident, the crux of Plaintiff's opposition is that notice can be imputed to Defendant due to an alleged recurrent condition, to wit, that animals would frequently urinate on the floor of its store. Yet, as detailed herein, it is clear that no such recurrent condition existed, as that term is defined under New York law, and even the case law

2

cited by Plaintiff does not support such a conclusion. Most importantly, Plaintiff has not presented non-conclusory and specific evidence to support this argument.

The First Department has stated that the burden on plaintiff to prove constructive notice may be satisfied by presenting, "evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the landlord." O'Connor-Miele v. Barhite & Holzinger, Inc., 234 A.D.2d 106, 106-107, 650 N.Y.S.2d 717, 719 (1st Dep't 1996). Therefore, the Court recognized that in order for plaintiffs to circumvent their obligation to prove traditional notice, they must be able to show that a condition was: (1) dangerous; (2) recurring; (3) that it recurred in a specific area; and (4) that it was routinely left unaddressed. *See also*, Lowe v. Spada, 282 A.D.2d 815, 817, 722 N.Y.S.2d 820, 823 (3d Dep't 2001)(stating that "although plaintiff could not establish precisely when the large puddle had formed, this was not fatal since she did establish that she slipped on a puddle in the *precise area* of the bathroom where there had been an ongoing and chronic problem with water puddles *routinely left unaddressed* by the maintenance company.")(emphasis added).

Here, Plaintiff has failed to present any evidence that a condition was recurring. Indeed, at best, Plaintiff's argument supports a theory that Defendant had a mere "general awareness" that a dangerous condition may have existed somewhere on the floor of the its premises, which, under New York law, is "legally insufficient to constitute notice of the particular condition that caused plaintiff's fall." Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969, 646 N.E.2d 795, 796, 622 N.Y.S.2d 493, 494 (1994). And because the condition was not recurring, "liability could be predicated only on failure of defendants to remedy the danger presented by the liquid after actual or constructive notice of the condition." Id.

Indeed, the case law cited by Plaintiff only supports a conclusion that a recurrent condition arises under two specific sets of circumstances, none of which apply here. In the first situation, notice is imputed and a condition is deemed "recurrent" because it was: (1) permitted to accumulate over time; and (2) routinely left unaddressed. *See, e.g.*, O'Connor-Miele v. Barhite & Holzinger, Inc., 234 A.D.2d 106, 106-107, 650 N.Y.S.2d 717, 719 (1st Dep't 1996)(considering whether the plaintiff presented sufficient proof as to whether her fall was due to the accumulation of soap powder in defendant's stairwell, which was present "due to spillage by tenants moving from floor to floor to find an available washing machine."); and Weisenthal v. Pickman, 153 A.D.2d 849 (2d Dep't 1989)(considering a case where the landlord permitted debris and litter to accumulate on an internal staircase over the course of weeks which it routinely failed to remedy.). Indeed, Plaintiff has presented no evidence that the condition complained of herein accumulated over time, or was routinely left unaddressed.

In the second situation, notice is imputed and a condition is deemed "recurrent" because it is: (1) a continuing dangerous condition; (2) located in a specific area; (3) that the Defendant knew to be dangerous; but (4) that it nevertheless took no steps to remedy. *See, e.g.*, Camizzi v. Topps, 244 A.D.2d 1002, 1002, 664 N.Y.S.2d 964, 964 (4th Dep't 1997)(finding a recurrent condition existed where the plaintiff presented evidence of a specific floor mat located in the entrance to defendant's store that would routinely buckle, and that defendant was aware that the mat buckled and constituted a tripping hazard, but nevertheless did not take any steps to remedy); Chin v. Harp Marketing, 232 A.D.2d 601, 648 N.Y.S.2d 697 (2d Dep't 1996)(considering a case where the plaintiff allegedly fell in defendant's produce aisle due to a broken bottle of salad dressing located in a specific location of defendant's store, and where the defendant had previously observed other broken bottles of salad dressing in the same area);

4

Padula v. Big V Supermarkets, Inc., 173 A.D.2d 1094, 570 N.Y.S.2d 850 (3d Dep't 1991)(considering a case where a plaintiff fell in a heavily trafficked area near the entry way to defendant's supermarket, in which area it was known that patrons would enter from a "slushy" parking area with wet shopping carts).[1] In the instant case, there is no evidence here that there was a continuing dangerous condition in the exact area of Plaintiff's fall that Defendant routinely left unaddressed.

Moreover, Silva's testimony confirmed that any animal urine that was found on the floor of Defendant's premises was cleared immediately, was not allowed to accumulate over time, and was routinely addressed. Silva, who had worked at Defendant's store for a little over two years (*see*, Exhibit "N" at Pg. 32, lines 21-25), was not aware of any other incident where someone slipped and fell on dog urine. *See*, Exhibit "N" at Pg. 33, line 25–Pg. 34, line 12; Pg. 39, lines 9-13. This is due to the fact that every four months Defendant would engage in training on cleaning up dog waste (*see*, Exhibit "N" at Pg. 33, line 17 – 24), which included what to do if an employee saw animal waste. *See*, Exhibit "N" at Pg. 34, line 13–Pg. 35, line 3. Defendant's employees would discuss cleaning up dog waste daily in their morning and evening huddles. *See*, Exhibit "N" at Pg. 35, line 9–Pg. 36, line 16. Indeed, Silva testified that every one of Defendant's employees was continuously on guard for any type of dog waste. *See*, Exhibit "N", Pg. 35, lines 4–15. To assist in these efforts, Defendant placed eight "oops" stations in their store, which contained everything one would need to clean up animal waste. *See*, Exhibit "N" at Pg. 66, line 24–Pg. 67, line 24.

---

[1] Note that Plaintiff also cites to Petri v. Half Off Cards, 284 A.D.2d 444, 727 N.Y.S.2d 455 (2d Dep't 2001), to support her recurrent condition theory. However, this case is not analogous to the instant case in any way, as the plaintiff in Petri alleged that the defendant's employees would routinely leave debris, wrapping material and greeting cards on the floor of the store when they unpacked merchandise. Therefore, there was a question of fact as to whether this was a recurring dangerous condition, and/or whether defendant created the condition that caused plaintiff to fall.

Under these circumstances, it is clear that Plaintiff cannot rely on recurrent condition case law to obviate her need to establish notice. Furthermore, in order to support a claim that a recurrent condition exists, Plaintiff must have presented "specific and nonconclusory factual references sufficient to raise a question of fact." *See*, Lowe, 282 A.D.2d at 817, 722 N.Y.S.2d at 822. For instance, in Zeller v. Pathmark Stores, Inc., No. 00-CV-8216 (DLC), 2001 WL 1196196 (S.D.N.Y. Oct. 10, 2001), the Court found that plaintiff's testimony that she had observed deli samples on the floor "many times" was conclusory and, therefore, "insufficient to create an issue of fact regarding the existence of a recurring condition." The Court continued that "[a]lthough circumstantial evidence can establish both 'actual knowledge' of the tendency of this activity to occur, and that the condition was 'routinely left unaddressed,' to do so the evidence must be 'specific' and 'nonconclusory'." Id. Here, like in Zeller, Plaintiff relies on a conclusory statement of a non-party witness that she observed dog urine on the floor on a "daily" basis. *See*, Memo in Opp. at Pg. 16. Under the above standard, this conclusory statement was insufficient to establish that a dangerous recurrent condition existed in the area of Plaintiff's fall, and that it was routinely left unaddressed by Defendant. Indeed it is clear that Defendant has presented sufficient evidence that it routinely inspected the floor of its store for the purpose of, *inter alia*, checking for dog waste, and that if it was identified it would be cleaned immediately.

Based on the above, it is clear that Plaintiff's argument that a recurrent condition existed in the area of Plaintiff's alleged fall should be summarily rejected.

## III.    DEFENDANT DID NOT CREATE ANY ALLEGEDLY DANGEROUS CONDITION

Plaintiff continues to argue that, "[s]ince the defendant affirmatively invited dogs to roam freely around the store, and invited this circumstance by signs posted at its entrance, there is a

clear issue of fact raised as to whether the defendant created the defective condition," (*see,* Memo in Opp. of Law at Pg. 18). However, Plaintiff's argument not only falsely characterizes the deposition testimony of Silva and the evidence adduced during discovery, but is also unsupported by any case law.

For instance, while Plaintiff argues that dogs were permitted to roam freely, it is clear that Silva testified that only leashed animals were allowed in Defendant's store. *See,* Exhibit "N" at Pg 62, lines 14-16. These leashed animals were, therefore, under the supervision and care of their owner. Moreover, although Plaintiff argues that the sign in front of the store "invited" animals, there is no evidence on the record other than that the sign stated the circumstances under which an animal would be permitted to enter. *See,* Exhibit "N" at Pg. 62, lines 17-21. Yet there can be no doubt that, as a pet store, animals were permitted in Defendant's premises.

However, none of these facts give rise to a conclusion that Defendant created an allegedly defective condition. Under New York law, Defendant must have performed some affirmative act leading to the defect's creation. Merely permitting leashed animals into a store, without more, is not an affirmative act. Indeed, as a pet store, it can be assumed that pet owners would bring their pets to Defendant's store. This was a fact that Plaintiff was aware of – she had come to Defendant's store to visit the Pet Hospital and make rabies shots for her dogs. *See,* Lyman Dec. at ¶3. Yet, Plaintiff has presented no evidence that Defendant "encouraged" this practice, and no case law to support a conclusion that even had Defendant done so it would be sufficient to find that Defendant created the alleged defect that caused Plaintiff's fall.

To that end, the cases cited by Plaintiff only address situations where the defendant is alleged to have created the condition through affirmative acts. For instance, in Petri, *supra,* the defendant was alleged to have created the condition when its employees affirmatively placed

debris, wrapping materials and greeting cards on the floor when they unpacked inventory. In Yarborough v. City of New York, 10 N.Y.3d 726. 882 N.E.2d 873, 853 N.Y.S.2d 261 (2008), the Court of Appeals considered a claim where plaintiff alleged that he fell in a pothole that was created by the City as a result of negligent repairs. Indeed, in Cornish v. City of Ithaca, 149 A.D.3d 1321, 52 N.Y.S.3d 565 (3d Dep't 2017), where the Court considered a case involving an exposed pipe on a public walkway, the Court noted that in order to have created the condition the municipality must have been found to have done so "through an affirmative act of negligence," which, "must have 'immediately result[ed] in the existence of [the] dangerous condition' alleged to have caused [a] plaintiff's injuries." *See also*, Chance v. County of Ulster, 144 A.D.3d 1257, 1259-1260, 41 N.Y.S.3d 313, 316 (3d Dep't 2016)(finding that, "[r]ather than attribute the accident to defendant's affirmative act, plaintiffs' expert attributed the accident to defendant's failure to act... Accordingly, even when viewing the evidence in the light most favorable to plaintiffs, they failed to raise a triable issue of fact as to an exception to the written notice requirement."); Chowdhury v. Rodriguez, 57 A.D.3d 121, 867 N.Y.S.2d 123 (2d Dep't 2008)(considering a case where the homeowner was alleged to have provided a defective ladder to individuals performing construction on her home.)

Therefore, none of the case law cited by Plaintiff, nor any of the evidence it presented, supports a conclusion that Defendant created an allegedly defective condition.

## IV.   PLAINTIFF DID NOT FALL IN THE "FRONT" OF THE STORE

In an attempt to create a factual issue, a major portion of Plaintiff's opposition relies on an erroneous conclusion that Plaintiff fell in the portion of the store where the majority of animal urine was located. This is simply not the case.

Although Silva testified at his deposition that 50% of any animal accidents occurred in the "front" of the store (*see*, Exhibit "N" at Pg. 63, line 16 – Pg. 65, line 17), there is no evidence that Plaintiff fell in the area he identified. Indeed, Plaintiff specifically identified the area of her fall when she marked photographs at her deposition, which was at or near the counter for Banfield Pet Hospital. *See*, Exhibit "M" at C, D and E. Silva's testimony clearly states that the "front" of the store, was the area of the store when you "first come in" (*see*, Exhibit "N" at Pg. 63, line 20-23) and when the dogs come "straight into the building." *See*, Exhibit "N" at Pg. 64, lines 6-16. Indeed, the area identified by Plaintiff was not located near the entryway to the store, but was located on the far right hand side of the building. *See*, *e.g.*, Exhibit "M" at "B".

Therefore, because the deposition testimony of Silva clearly states that the area he was referring to was the area abutting the entryway, an area that is separate and apart from the area Plaintiff identified as the location of her accident, it is clear that Plaintiff's argument that she fell in the "front" of the store should be summarily rejected.

## V.   PLAINTIFF'S ARGUMENT THAT DEFENDANT HAD A DUTY TO WARN MUST FAIL

In its final argument, Plaintiff alleges that Defendant must have warned its customers of the "possibility" of urine, and to take precaution. However, even if Defendant had an obligation to warn Plaintiff of any potential animal waste on the floor of its premises, this duty was discharged.

It is clear that Plaintiff was aware that animals were allowed into Defendant's store – she was present on the date of her accident for the express purpose of visiting the animal hospital to make an appointment for rabies shots for her two dogs. *See*, Lyman Dec. at ¶3. Moreover, she also visited the animal training circle with her granddaughter to "look[] at the activities for

9

several minutes." *See*, Lyman Dec. at ¶9. Therefore, it is clear that Plaintiff was fully aware of the fact that animals were permitted at Defendant's store and, consequently, the fact that animal waste would result should not have come as a surprise.

Yet, even with that knowledge, Plaintiff conveniently ignores the fact that Defendant had placed eight "oops" stations throughout its store, which were placed for the express purpose of cleaning animal waste. *See*, Exhibit "N" at Pg. 26, lines 3 – 15; Pg. 67, line 24. Ninety percent of these "oops" stations, "were green, so they stand out. They have a big oops sign on top." *See*, Exhibit "N" at Pg. 67, lines 5-7. Moreover, they contain "cleaning agents", "paper towels", "two slip and fall signs", "wet floor signs" and a place to dispose of animal waste. *See*, Exhibit "N" at Pg. 67, lines 7 – 12. Therefore, to the extent Defendant had a duty to warn that there may be animal waste on the floor, it discharged this duty by placing eight of these "oops" stations throughout its store.

## CONCLUSION

In light of the foregoing, Defendant, PetSmart, Inc, respectfully requests that this Honorable Court grant its motion for summary judgment in all respects.

THE CHARTWELL LAW OFFICES, LLP

Dated: <u>October 20, 2017</u>

BY:  <u>/s/ John M. Wutz</u>
JOHN M. WUTZ, ESQUIRE
Attorney for the Defendant
Bar Roll Number: 4456067
One Logan Square, 26th Floor
130 N 18th Street
Philadelphia, Pennsylvania 19103
Tel: (215) 972-7006
Fax: (215) 972-7008