UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LISA LYMAN,

                        Plaintiff,

          -against-

PETSMART, INC.,

                        Defendant.

-----------------------------------------------------------------X

**OPINION AND ORDER**

16 Civ. 04627 (JCM)

      Lisa Lyman ("Plaintiff") commenced this action against PetSmart, Inc. ("Defendant" or

"PetSmart") to recover for personal injuries allegedly sustained as a result of a fall at the

Defendant's Mohegan Lake Store on August 25, 2014. (Docket No. 1-1).  Before the Court is

Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure ("Motion").[1] (Docket No. 15).  Plaintiff filed her Complaint on December 10, 2015 in

the Supreme Court of the State of New York, County of Westchester. (Docket No. 1-1).

Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446,

(Docket No. 1), and subsequently filed a Motion for Summary Judgment on September 14, 2017,

(Docket No. 15).  Plaintiff opposed the Motion on October 10, 2017, (Docket No. 21), and

Defendant replied on October 20, 2017, (Docket No. 22).[2]  For the reasons that follow,

Defendant's Motion is granted in its entirety.

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c) and
Fed. R. Civ. P. 73. (Docket No. 8).

[2] The parties' briefs are hereinafter referred to as "Def. Br.," "Pl. Opp." and "Def. Reply," respectively. (Docket
Nos. 17, 21, 22).  All page number citations to briefs refer to the page number assigned upon electronic filing.

## I. BACKGROUND

The following facts are taken from Defendant's Statement of Material Facts submitted pursuant to Local Rule 56.1 of the United States District Courts of the Southern and Eastern Districts of New York, ("Def. 56.1"), (Docket No. 18), the parties' exhibits, and the declarations submitted by the parties in support of their contentions.[3] The following facts are construed in the light most favorable to Plaintiff as the party opposing summary judgment.

Defendant PetSmart is a pet store located in Mohegan Lake, New York. PetSmart shares this location with Banfield Pet Hospital ("Banfield"). At 5:00 p.m. on August 25, 2014, Plaintiff visited Defendant's Mohegan Lake Store with her nine-month-old granddaughter to schedule an appointment at Banfield for her dogs to receive rabies vaccinations. (Pl. Dep. at 90-91; Pl. Dec. ¶ 2). Upon arrival, Plaintiff noticed "people in front of [her] with dogs walking into the store and into the shopping areas . . . ." (Pl. Dec. ¶ 5). She approached the Banfield counter, made her appointments, and then ventured down a shopping aisle to the back of the store with her granddaughter.[4] (Pl. Dec. ¶¶ 6-7; Pl. Dep. at 97-98).

Plaintiff and her granddaughter came across a dog training area in the rear of the store, where they stopped and watched the activities for "several minutes." (Pl. Dec. ¶ 7). Plaintiff then walked back through the same aisle with the intention of exiting the building. (Pl. Dec. ¶ 9; Pl. Dep. at 98-99). At approximately 5:30 p.m., at the head of the aisle and as Plaintiff was turning right toward the building's exit, her right foot slipped in a puddle of dog urine and her left knee

[3] Defendant's Exhibit L is the deposition transcript of Plaintiff (hereinafter "Pl. Dep."). Defendant's Exhibit N, which is also Plaintiff's Exhibit 4, is the deposition transcript of David Silva (hereinafter "Silva Dep."). Plaintiff's Exhibit 5 is the deposition transcript of Rebecca Henderson (hereinafter "Henderson Dep."). (Docket Nos. 16, 20). Plaintiff's Declaration in opposition to Defendant's Motion is hereinafter referred to as "Pl. Dec." (Docket No. 19).

[4] Plaintiff held her approximately eighteen-pound granddaughter in her arms throughout her entire visit to the store. (Pl. Dep. at 97; Pl. Dec. ¶ 3).

buckled underneath her, causing her to fall onto her back and into the puddle, (Pl. Dec. ¶ 10; Pl.

Dep. at 99). As she was falling, Plaintiff managed to hold her granddaughter straight out in front

to prevent her from getting hurt. (*Id.*). Plaintiff later testified that she did not know how long the

puddle had been there before she fell. (Pl. Dep. at 127). In addition, Plaintiff conceded that she

never saw the puddle or any track marks or footprints surrounding the puddle prior to her fall.

(*Id.*). In fact, she did not know what caused her to slip until she was on the ground. (*Id.* at 126).

After the fall, customers and employees helped Plaintiff to her feet and walked her to a

nearby bench. (Pl. Dep. at 115). A Banfield veterinarian cleaned up the urine puddle and

replaced it with a wet floor sign. (Silva Dep. at 89). Around this time, "assistant store leader,"

(*id.* at 14), and "safety captain," (*id.* at 13), David Silva, was summoned to the scene of the

accident, (*id.* at 76-77). Mr. Silva estimated that he saw ten dogs in the thirty minute period

before the accident, (*id.* at 94), and testified that four employees were working throughout the

public areas of the store at the time of the accident, (*id.* at 95). He asked Plaintiff if she needed

an ambulance, but she declined. (*Id.* at 86-87; *see also* Pl. Dep. at 132). Mr. Silva subsequently

filled out an incident report with Plaintiff's assistance. (Silva Dep. at 87; Pl. Dep. at 131). Two

customers then helped Plaintiff to her car. (Pl. Dep. at 138).

According to Mr. Silva, all of Defendant's employees go through an "associate basic

certification," (Silva Dep. at 21), consisting of multiple modules which cover various aspects of

the business, including safety, (*id.* at 11, 18-19). The basic certification concludes with a written

multiple choice exam, on which all employees must get a perfect score to pass. (*Id.* at 22).

Additionally, Defendant's employees are trained in the prevention of customer accidents and

directed to be on constant lookout for any type of pet waste that would be on the floor. (*Id.* at

36). These safety techniques are reiterated in morning and evening "huddles," which take place

daily before the opening and closing shifts, respectively. (*Id.* at 36-37). Moreover, Defendant's

managers are responsible for performing "complete store walk[s]," during which they check for

safety hazards in every section and aisle of the store building, including the Banfield area. (*Id.* at

47, 73-74). These checks are required to be performed once every four hours beginning at 9:00

a.m. (*Id.* at 47). During the checks, managers must initial checklists at four different locations

throughout the store to attest the completion of their responsibilities. (*Id.* at 51). Mr. Silva

testified that on the day of Plaintiff's fall he performed his 5:00 p.m. walk, which he

approximated would have placed him in the area of the Plaintiff's fall at around 5:00 p.m. to 5:05

p.m. – approximately 25 to 30 minutes before the accident occurred. (*Id.* at 56). Mr. Silva also

testified that his walkthrough included the exact area that Plaintiff marked with an "X" in

Defendant's Exhibit F-1 to indicate where she fell. (*Id.* at 113-14; Pl. Dep. at 112). However,

Plaintiff claims that there is a "gaping factual issue" as to where she fell, (Pl. Opp. at 8), because

it was "a great distance from where Mr. Silva claims she fell," (*id.* at 21).

## II. SUMMARY JUDGMENT STANDARD

New York state law governs the substantive slip and fall claim.[5] However, federal law

applies to procedural aspects of the claim. *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02 CIV.

4196 (NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) ("We find that the issue of

what burden a movant for summary judgment bears when the ultimate burden of proof lies with

the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co.*

*v. Tompkins,* 304 U.S. 64 (1938) and its progeny, and accordingly is subject to federal rather than

state law.") (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)); *see also Hanna v. Plumer*, 380

---

[5] Because jurisdiction over this matter is based upon the parties' diversity of citizenship, and because the alleged
acts occurred in New York, the parties agree that New York law governs the substantive claims. (Def. Br. at 8-9; Pl.
Opp. at 10).

U.S. 460, 465 (1965). The moving party's burden of proof on a summary judgment motion is procedural, and is therefore governed by federal law. *Hughes v. United States*, No. 12 Civ. 5109(CM), 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014) (applying the federal burden of proof standard on a motion for summary judgment, explaining that "[e]ven though the substantive claims are governed under New York law, the procedural issues are determined under the federal standard").

The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law on a slip-and-fall action.[6] *See, e.g.*, *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12-13 (2d Cir. 2008). "Under New York law, '[a] defendant who moves for summary judgment in a [sl]ip-and-fall case has the initial burden of making a prima facie showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it.'" *Vasquez v. United States*, No. 14-CV-1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)). Conversely, under federal law, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Id.* at *5 (quoting *Zeak v. United States*, No. 11 CIV. 4253 KPF, 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014)); *see also Feis v. United States*, 394 F. App'x 797, 798-99 (2d Cir. 2010) (applying New York substantive law and federal procedural law, finding that

---

[6] Plaintiff states that New York procedural law applies to this case, and incorrectly makes all arguments under the New York standard, without setting forth any argument for why the New York standard should apply. (*See* Pl. Opp. at 10-13).

"contrary to plaintiff's assertions, defendant was not required to affirmatively disprove each element of plaintiff's [slip-and-fall] claim.").

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322. A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (citation omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citations omitted). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). Under federal law, the moving party may meet its burden of proof simply by pointing to the absence of evidence to support an essential element of the plaintiff's claim. *See Tenay*, 281 F. App'x at 12-13 ("[T]he moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's

claim.") (internal quotation marks and citations omitted); *Cruz v. Target Corp.*, No. 13 CIV. 4662 NRB, 2014 WL 7177908, at *3 (S.D.N.Y. Dec. 17, 2014) ("In federal court, it is the plaintiff who, as the nonmoving party, bears the burden of showing a genuine dispute of material fact, even though a New York state court would require the defendant to produce affirmative evidence on the key issue of whether the defendant had adequate notice of the spill."). Therefore, Defendant may meet its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," but need not "raise a prima facie case." *Hughes*, 2014 WL 929837, at *4 (quoting *Celotex*, 477 U.S. at 325). Here, the Court finds that Defendant has met its initial burden by pointing to the absence of evidence in support of Plaintiff's claim, including the failure to establish that Defendant created the condition or had actual or constructive notice of it. (*See generally* Def. Br.).

Since the moving party has met this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Holcomb*, 521 F.3d at 137. "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249-50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, Plaintiff "'may not rely on conclusory allegations or unsubstantiated speculation,' but must support the existence of an alleged dispute with specific citation to the record materials." *Hughes*, 2014 WL 929837, at *3 (internal citations omitted); *see also* Fed. R. Civ. P. 56(c). Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the non-moving party fails to establish the existence of

an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

In the Southern District of New York, parties moving for and opposing summary judgment motions must also submit short and concise statements of facts, supported by evidence that would be admissible at trial. Local Civ. R. 56.1. The party opposing summary judgment must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, "uncontested fact[s] cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement"—in the absence of citations or "where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks and citations omitted). The Court therefore has discretion "to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Id.* at 73 (quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c)(3). If the non-moving party makes an assertion which disputes the movant's Rule 56.1 statement, the facts must be viewed by this Court in the light most favorable to Plaintiff. *See Jimenez ex rel. Jimenez v. KFC of California, Inc.*, No. 02 Civ. 2826 (RCC), 2003 WL 22244673, at *3 (S.D.N.Y. Sept. 30, 2003). Nevertheless, the Court is "not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quotation marks and citations omitted).

## III. DISCUSSION

In this action, Plaintiff claims that there was a dangerous condition in Defendant's store that caused her to fall and sustain injuries. (Def. 56.1 ¶ 1). Plaintiff alleges that Defendant created the dangerous condition, (Pl. Opp. at 17-20), had actual or constructive notice of the condition, (*id.* at 13-17), failed to warn the Plaintiff of the dangerous condition, (*id.* at 22), and that genuine issues of material fact exist to warrant a trial by jury, (*id.* at 20-21). Defendant argues that Plaintiff has not offered any evidence to support her claim and that Plaintiff has failed to raise a genuine dispute of material fact regarding whether Defendant created or had notice of the dangerous condition. (Def. Br. at 10).

Under New York law, "[t]o establish a *prima facie* case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon by Solomon v. City of N.Y.*, 499 N.Y.S.2d 392, 392 (1985) (citations omitted). Here, Defendant admits it had a duty to its customers to keep its store reasonably clear of any dangerous conditions. (Def. Br. at 9). However, Defendant maintains that Plaintiff failed to adduce evidence demonstrating that Defendant breached its duty. (*Id.*)

To make out a breach of this duty in a premises liability case, specifically, a plaintiff must first show "the existence of a dangerous or defective condition." *Vasquez*, 2016 WL 315879, at *4 (internal quotation marks omitted) (citing *Winder v. Exec. Cleaning Servs., LLC*, 936 N.Y.S.2d 687, 687 (2d Dep't 2012)). Next, "the plaintiff must demonstrate 'that the [defendant] either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it.'" *Tenay*, 281 F. App'x at 13. (quoting *Baez v. Jovin III, LLC*, 839 N.Y.S.2d 201, 202 (2d Dep't 2007))

(alteration in original).  Under New York law, Plaintiff bears the burden of proof on the elements of her premises liability claim at trial. *Id.*

## A.  Existence of a Dangerous Condition

There is no dispute that there was a wet substance on the floor at the Mohegan Lake Store at the time of Plaintiff's accident. (*See generally* Def. Br.; Def. Reply).  Indeed, the evidence supports this fact.  For example, Mr. Silva's deposition transcript indicates that a Banfield veterinarian cleaned up the dog urine after Plaintiff was assisted to the bench. (Silva Dep. at 89).  Plaintiff also testified that after her fall she observed a substance on the floor that appeared to be dog urine. (Pl. Dep. at 124).  This constitutes sufficient evidence at the summary judgment stage to establish that a wet substance was on the floor and, thus, a dangerous condition existed. *See Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335 (JMA), 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009) ("[P]laintiff's testimony that she saw a puddle immediately after her fall is enough, at the summary judgment stage, to establish that a hazard existed.").

## B.  Creation of a Dangerous Condition

The mere existence of a dangerous condition does not establish a breach of the duty of care. *See Castellanos v. Target Dep't Stores, Inc.*, No. 12 Civ. 2775 (GWG), 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013).  "To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant." *Vasquez*, 2016 WL 315879, at *7 (citing *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014); *Gonzalez v. Wal–Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004)).  "Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that Defendant created the condition through affirmative acts, [a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Decker v. Middletown Walmart Supercenter Store #1959,*

No. 15 Civ. 2886 (JCM), 2017 WL 568761, at *5 (S.D.N.Y. Feb. 10, 2017) (quotation marks and citations omitted).

Plaintiff concedes she has "no idea" how the puddle of dog urine got on the floor. (Pl. Dep. at 127). She also admits that she does not "have any evidence that any PetSmart employees caused the urine to be on the floor." (*Id.* at 128). Plaintiff has not introduced any facts supporting an inference that a PetSmart employee caused the urine to be on the floor. There is no proof from either party, only mere speculation, as to how the urine got on the floor. "[A]bsent evidentiary proof in admissible form . . . , the plaintiff has not raised a triable issue of fact." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 331 (E.D.N.Y. 1998); *see also Strass v. Costco Wholesale Corp.*, No. 14-CV-6924 (PKC) (VMS), 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016) (summary judgment granted where plaintiffs failed to identify any evidence that defendant created the spill).

Plaintiff alleges that, although she does not know how the puddle got on the floor, Defendant nevertheless created the dangerous condition by "invit[ing] its customers to bring their dogs into the store and roam, unfettered, around the store." (Pl. Opp. at 17). As an initial matter, only pets that are vaccinated, leashed and under the supervision of their owners are allowed in Defendant's store. (Silva Dep. at 62-63). Therefore, Plaintiff exaggerates Defendant's policy by stating that the visiting dogs are "unfettered." (Pl. Opp. at 17). Regardless, Defendant's passive activity of allowing pets in its store cannot be considered an "affirmative, 'deliberate and intentional' act by defendant." *Nussbaum v. Metro-N. Commuter R.R.*, 994 F. Supp. 2d 483, 493 (S.D.N.Y. 2014), *aff'd* 603 F. App'x 10 (2d Cir. 2015) (citation omitted).

For example, in *Quarles*, the plaintiff sought damages after slipping in a puddle of coffee spilled by another hotel guest. 997 F. Supp. at 329. The Court analyzed whether the hotel created the dangerous condition by providing coffee to its patrons. *Id.* at 330. The Court ultimately held that the hotel's provision of coffee to its patrons "does not establish the creation of the puddle, because, the puddle is not a *direct consequence* of the defendant's *passive activity* of providing guests with coffee." *Id.* (emphasis added). As in *Quarles*, the puddle of urine is not a direct consequence of Defendant's passive activity – the allowance of pets in the store. At most, Defendant's pet-friendly policy indirectly led to the possibility of a dangerous condition, which is legally insufficient. *See, e.g.*, *Cousin*, 2009 WL 1955555, at *6 ("[T]he mere presence of a self-service beverage station in the restaurant, by itself, does not tend to prove that defendant created the hazard."); *Buskey v. Boston Mkt. Corp.*, No. 04 CV 2193(SJ), 2006 WL 2527826, at *5 (E.D.N.Y. Aug. 14, 2006) (holding that the a pool of water was not a "'direct consequence of the defendant's passive activity of' placing a bucket in the restroom") (quoting *Quarles*, 997 F. Supp. at 330); *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998) ("The mere fact that a puddle of liquid originated from store merchandise does not establish the creation of the puddle, because, the puddle is not a direct consequence of the defendant's passive activity of providing merchandise for sale."); *Winecki v. W. Seneca Post 8113, Inc.*, 643 N.Y.S.2d 292, 292 (4th Dep't 1996) (declining to find that Defendant created the dangerous condition because the configuration of its banquet room "creat[ed] a danger of spills.").

Therefore, Plaintiff has not set forth sufficient evidence to avoid summary judgment because she failed to identify an affirmative and deliberate act that can be attributed to Defendant. *See Cousin*, 2009 WL 1955555, at *6 ("A plaintiff cannot avoid summary judgment

through mere speculation and conjecture regarding how a defendant may have created a particular hazard.") (citing *Krichevskaya v. City of N.Y.*, 817 N.Y.S.2d 103 (2d Dep't 2006)).

## C. Actual Notice of a Dangerous Condition

Absent evidence that Defendant created the condition, to establish her claim Plaintiff must demonstrate either actual or constructive notice. *See Quarles*, 997 F. Supp. at 332. "A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall." *Decker*, 2017 WL 568761, at * 6. (citing *Cousin*, 2009 WL 1955555, at *7); *see also Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) ("Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition.").

First, as previously discussed, Plaintiff has offered no evidence that Defendant created the condition. Second, there is no evidence that Defendant was aware of the puddle of urine that caused Plaintiff's fall. For example, there is no indication in the record that Defendant's employees observed the substance on the floor prior to Plaintiff's fall. Mr. Silva testified that, to his knowledge, no one in the area saw the puddle prior to Plaintiff's fall. (Silva Dep. at 101-05). Furthermore, Plaintiff does not set forth any evidence that Defendant received reports of the condition. In fact, Plaintiff concedes that she did not see the puddle herself until after she slipped in it. (Pl. Dep. at 122). Thus, because there is no evidence that Defendant had actual notice of the substance on the ground, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding actual notice. *See Rivera v. Target Dep't Store, Inc.*, 15 Civ. 7846 (HBP), 2017 WL 2709745, at *6 (S.D.N.Y. June 22, 2017) (finding no actual notice where Defendant was not aware of "water on the floor in the area of [P]laintiff's fall at any time prior to [P]laintiff's accident.").

**D. Constructive Notice of a Dangerous Condition**

Since Plaintiff has not shown that Defendant either created or had actual notice of the condition, the only remaining issue is whether Defendant had constructive notice of the condition. "'To constitute constructive notice a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it.'" *Watts v. Wal-Mart Stores East, LP*, No. 16-CV-4411 (KMK), 2018 WL 1626169, at *5 (S.D.N.Y. Mar. 29, 2018) (quoting *Gordon v. Am. Museum of Nat'l History*, 501 N.Y.S.2d 646, 647 (1986)); *see also Serrano v. Haran Realty Co.*, 650 N.Y.S.2d 236, 236 (1st Dep't 1996) (defendant could not be charged with constructive notice of dog urine on its premises where there "was no evidence as to the length of time the particular condition that caused plaintiff's fall had existed prior to the fall"); *Decker*, 2017 WL 568761, at *4. Defendant maintains that Plaintiff cannot raise a genuine issue of material fact regarding constructive notice. However, Plaintiff argues that a material issue of fact exists. (Def. Br. at 9-11, Pl. Opp. at 5, 9, Def. Reply at 5-13). Furthermore, Plaintiff contends that Defendant had actual knowledge of the tendency of the visiting pets to have accidents on the Defendant's floor, and therefore, Defendant should be charged with constructive notice of this specific recurrence of that condition. (Pl. Opp. at 13).

**1. Visible and Apparent**

Plaintiff has failed to demonstrate that the condition was visible and apparent. As noted, Plaintiff testified that she did not see the condition until after she slipped and fell. (Pl. Dep. at 122). Other courts in this Circuit "have found insufficient evidence to raise a triable issue of fact regarding whether a condition was visible and apparent where a plaintiff did not see the condition prior to a fall or failed to offer evidence that others saw the condition prior to the fall." *Decker*, 2017 WL 568761, at *7 (citing cases). "Under New York law, '[t]he mere existence of a

foreign substance, without more, is insufficient to support a claim of negligence.'" *Watts*, 2018 WL 1626169, at *5 (citing *Segretti v. Shorenstein Co., East L.P.*, 682 N.Y.S.2d 176, 178 (1st Dep't 1998)). Plaintiff has failed to establish a triable issue of fact as to whether the substance was visible and apparent. *See Vasquez*, 2016 WL 315879, at *8 (granting summary judgment on issue of constructive notice where "Plaintiff points to no evidence contradicting this testimony or otherwise demonstrating that the allegedly dangerous condition was visible or apparent."); *Castellanos*, 2013 WL 4017166, at *6 (finding plaintiff presented no evidence that dangerous condition was visible and apparent where both plaintiff and her fiancé testified that they did not see the condition until after plaintiff's fall and where no other witness saw the condition).

**2. Length of Time**

Defendant further argues that "Plaintiff has not provided any factual evidence to support a conclusion as to how or when the dog urine was deposited on the floor" of the Mohegan Lake Store. (Def. Br. at 10). "To get to a jury, [Plaintiff] is required to provide some basis for an inference that the spill was there long enough to blame [Defendant] for the accident." *Casierra v. Target Corp.*, No. 09-CV-1301 (JG)(MDG), 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010); *see also Toscano v. Petsmart, Inc.*, 16-CV-0587 (GTS/CFH), 2018 WL 813633, at *6 (N.D.N.Y. Feb. 9, 2018) ("'[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant.'") (quoting *Stephanides v. BJ's Wholesale Club*, No. 12 CV 0083(CLP), 2013 WL 1694901, at *15 (E.D.N.Y. Apr. 18, 2013)); *Serrano*, 650 N.Y.S.2d at 236 (summary judgment warranted where there was an absence of evidence as to how long dog urine was on the floor). Summary judgment can be defeated if there is sufficient evidence, even if circumstantial, for a jury to reasonably draw an inference that the condition was there long enough for the

defendant to reasonably discover. *See Castellanos*, 2013 WL 4017166, at *5. Here, Plaintiff does not put forth any evidence beyond mere speculation to indicate how long the puddle existed before she fell. She fails to put forth any evidence, either in the form of personal or witness recollection or of track marks or footprints through the puddle, and cannot describe what the puddle looked like prior to the accident. Therefore, the Court holds that Plaintiff has not met her burden of raising a triable issue that the puddle existed for a sufficient length of time so as to establish Defendant's constructive notice. *See Toscano*, 2018 WL 813633, at *6. Based on the above analysis, "a verdict in plaintiff's favor, based solely on this record, would constitute speculation, rather than a finding of fact." *Lacey v. Target Corp.*, No. 13 CV 4098(RML), 2015 WL 2254968, at *5 (E.D.N.Y. May 12, 2015).

Moreover, "Defendant need not offer any evidence showing that its cleaning and inspection practices would have revealed the existence of a dangerous condition, but must only demonstrate that Plaintiff lacks affirmative proof sufficient to establish a genuine issue of fact with respect to the element of notice." *Vasquez*, 2016 WL 315879, at *8. Nevertheless, Defendant offers ample evidence of its safety protocol requiring managers to perform periodic checks throughout the day. As per store policy, managers are required to "walk the entire building . . . at 9:00 a.m., at 1:00 p.m., at 5:00 p.m. and then . . . at 9:00 p.m.," (Silva Dep. at 47), and "sign off four times in different sections of the building" to confirm that they have performed all safety checks, (*id.* at 51-53), including inspecting the floor for any hazards such as the one at issue, (*id.* at 55). Additionally, Defendant's employees are trained to "look[] at the floors all the time," (*id.* at 54), and "continuously be on guard for any type of dog waste that would be on the floor," (*id.* at 35-36; *see also id.* at 26).

Defendant's employee, Mr. Silva, testified that, as the manager on duty at the time of the accident, he performed a routine safety check throughout the entire store just prior to Plaintiff's fall.[7] (Silva Dep. at 56-57). More specifically, he estimated that he checked the area of the fall at around 5:00 p.m. to 5:05 p.m., (*id.*), or about 25 to 30 minutes before Plaintiff fell. Generally, this amount of time is insufficient to find that a defendant had constructive notice of the dangerous condition. *See Mehta v. Stop & Shop Supermarket Co.*, 12 N.Y.S.3d 269, 271 (2d Dep't 2015) (holding that ten to fifteen minutes was not a sufficient amount of time to establish constructive notice); *Santello v. City of N.Y.*, No. 102753/07, 2009 WL 4893954 (N.Y. Sup. Ct. Nov. 16, 2009) (holding that twenty minutes was not a sufficient amount of time to establish constructive notice); *Ulu v. ITT Sheraton Corp.*, 813 N.Y.S.2d 441, 442 (2d Dep't 2006) (holding that fifteen to twenty five minutes was not a sufficient amount of time to establish constructive notice); *but see Keller v. City of N.Y.*, 687 N.Y.S.2d 374, 375 (1st Dep't 1999) (denying summary judgment because twenty minutes was sufficient for the jury to infer constructive notice).

### 3. Recurring Condition

Plaintiff maintains that a jury can charge Defendant with constructive notice of the dangerous condition because Defendant had actual knowledge that dog urination was a recurring hazard within its store. (Pl. Opp. at 13). Defendant argues that Plaintiff's "recurring condition"

---

[7] Plaintiff also argues that Defendant's failure to submit the security log sheet was detrimental to Defendant's assertion that Mr. Silva inspected the area of Plaintiff's fall right before the accident occurred. (Pl. Opp. at 20). However, Defendant's failure to provide written proof of its last inspection does not preclude summary judgment. *See Castellanos*, 2013 WL 4017166, at *7 ("[Defendant's] failure to present detailed evidence concerning its inspections of the premises does not preclude summary judgment, as the initial burden rests with the plaintiff to raise a triable issue of fact that the defendant created or had constructive notice of the dangerous condition."). Additionally, the lack of a written log does not necessarily negate Mr. Silva's recollection of conducting the walkthrough or his testimony demonstrating that walkthroughs were a "routine practice" of Defendant. *See Toscano*, 2018 WL 813633, at *7 (granting summary judgment where defendant testified he routinely conducted walkthroughs of the entire store, notwithstanding the lack of a written log).

theory fails because of the lack of evidence showing the condition at issue was (1) "recurrent" as required under New York law and (2) routinely left unaddressed. (Def. Reply at 6-10).

A plaintiff can establish constructive notice by submitting "evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the landlord." *Gonzalez*, 299 F. Supp. 2d at 193; *see also Bogery v. United States*, No. 17-CV-6996 (VEC), 2018 WL 4265901, at *7 (S.D.N.Y. Sept. 6, 2018) (plaintiff relying on a "recurring condition" theory must submit evidence that the hazard was recurring and that said hazard "went regularly or routinely unaddressed."). "In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue." *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) (citation omitted).

Plaintiff relies on the deposition testimony of Dr. Henderson, a Banfield veterinarian who worked in Defendant's store, where she testified that she saw "urine at various places around the store" on a "daily" basis. (Henderson Dep. at 24-25). Mr. Silva, Defendant's assistant store manager, similarly acknowledged that dogs frequently relieved themselves inside Defendant's store as a result of smelling "the pheromones of other dogs" that had urinated in the store previously and because sometimes dog owners did not wait to walk their dogs outside. (Silva Dep. at 63-64). According to Mr. Silva, approximately 50% of these accidents occurred near the front of the store and the remaining 50% occurred scattered throughout the store. (*Id.*).

Defendant cites to evidence that it had a comprehensive system in place to address the issue of pet-related accidents within its store. Defendant had approximately eight "oops stations" throughout the store, which were used by both employees and customers to clean up pet accidents. (Silva Dep. at 67-68). The stations are green, have an "oops" sign on top, and are

stocked with paper towels, cleaning agents, wet floor signs and a waste removal basket. (*Id.* at

67). During mandatory safety meetings, Defendant reiterated the importance of customer safety,

(*id.* at 36-37), and required its employees to watch slip and fall videos approximately every four

months, (*id.* at 34). Defendant trained its employees to be on continuous guard for animal

accidents, (*id.* at 26, 35-36), and if Defendant's employees saw any urine on the floor, they were

trained to grab a cone right away and clean up, (*id.* at 35, 55). Defendant extended this training

to every employee who was working on the day of the accident. (*Id.* at 21-22). Moreover,

Defendant implemented a policy requiring leashes on all pets in an effort to ensure pets in its

store remained supervised by their owners. (*Id.* at 63). Defendant posted its leash policy on a

sign at the front of the store. (*Id.* at 62). Furthermore, Defendant's managers are responsible for

walking throughout the entire store and conducting safety checks at 9:00 a.m., 1:00 p.m., 5:00

p.m. and 9:00 p.m. (*Id.* at 46). On the day of the accident, Mr. Silva began his store-wide

inspection at approximately a quarter to 5:00 p.m. and inspected the area of Plaintiff's alleged

fall between 5:00 p.m. and 5:05 p.m. (Def. 56.1 ¶¶ 21-23; Silva Dep. at 55). Mr. Silva testified

he did not observe urine on the floor during his 5:00 p.m. walkthrough of the store. (Def. 56.1 ¶

24; Silva Dep. at 102-03).

There is evidence that Defendant was aware of a recurring condition within its store. Mr.

Silva's testimony that dogs relieved themselves once they entered the store because they smelled

the pheromones of other dogs suggests Defendant was aware of a specific recurring condition.

(Silva Dep. at 63-64). Nevertheless, Plaintiff has failed to adduce evidence indicating that the

problem of dog waste routinely went unaddressed. There is no dispute that Defendant employed

numerous safeguards against slip and fall dangers resulting from dog-related accidents within its

store. Plaintiff tries to create a triable issue of fact by arguing that Defendant may not have

inspected the exact area where she slipped and fell during Mr. Silva's 5:00 p.m. safety check. (Pl. Opp. at 20-21).  Even so, this fact is not material because Defendant was not required to set forth evidence of its last inspection of the area where Plaintiff fell to prevail on summary judgment. *See Vasquez*, 2016 WL 315879, at *8 ("Defendant need not offer any evidence showing that its cleaning and inspection practices would have revealed the existence of a dangerous condition, but must only demonstrate that Plaintiff lacks affirmative proof sufficient to establish a genuine issue of fact with respect to the element of notice.").  Accordingly, because there is no evidence that the issue of dog-related accidents went regularly unaddressed, Plaintiff's "recurring condition" theory fails as a matter of law. *See Bogery*, 2018 WL 4265901, at *7 ("[W]hile there is evidence in the record from which Plaintiff can argue that [there was] a recurring condition, there is no evidence from which she could argue that this recurring condition went regularly or routinely unaddressed, precluding her claim based on a 'recurring condition' theory.").

**E.  Duty to Warn**

Finally, Plaintiff argues that Defendant is "liable on the theory of its failure to warn of a dangerous condition." (Pl. Opp. at 22).  She claims that because Defendant was aware of the recurring pet urination issue, "there should be, at least, a minimum requirement that the [D]efendant warn its customers of this possibility and to take precaution.  It did not and therefore [it] failed in its duty to forewarn its customers . . . ." (*Id.*).  In response, Defendant points to evidence that Plaintiff was aware of Defendant's pet-friendly policy and argues that to the extent it had a duty to warn, it discharged its duty by prominently placing "oops" stations throughout its store. (Def. Reply at 13-14).

Under New York law, "a duty to warn arises only where there is actual or constructive notice of a danger, and is thus coextensive with the negligence standard." *Gervis v. Target Corp.*, No. 16-cv-380 (GRB), 2017 WL 3669009, at *5 (E.D.N.Y. July 20, 2017) (citing *Ramos v. Baker*, 937 N.Y.S.2d 328, 330 (2d Dep't 2012)); *see also Maguire by Maguire v. Southland Corp.*, 665 N.Y.S.2d 680, 681 (2d Dep't 1997) ("Without evidence legally sufficient to permit a jury to rationally infer that the defendant had constructive notice of a dangerous condition, the defendant cannot be held liable for failure to warn or to remedy the defect."). Here, there is no evidence Defendant had actual or constructive notice of the condition that caused Plaintiff's fall, and therefore, Plaintiff cannot establish an injury resulting from a negligent failure to warn. *See* Sections III.C and III.D, *supra*. Additionally, the Court agrees with Defendant that Plaintiff's awareness of Defendant's pet-friendly policy further militates against imposing a duty to warn in this case. *See D.C. ex rel. Christian ex rel. Christian v. Petco Animal Supplies Stores, Inc.*, 847 N.Y.S. 895, 895 (N.Y. Sup. Ct. 2007) (pet store did not breach a duty to warn where "Plaintiffs owned several pets, frequented their local Petco in the past and should have been aware of its pet-friendly policy.").

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety. The Clerk is respectfully requested to terminate the pending motion (Docket No. 15), enter judgment for Defendant, and close the case.

Dated:   September 21, 2018
         White Plains, New York

**SO ORDERED:**

_____

JUDITH C. McCARTHY
United States Magistrate Judge
